**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHIMWALA F. ENGLISH,**<br>**Individually and as Personal Representative of the Estate of Reginald Burrell**<br>**917 Benalli Drive**<br>**Middletown, Delaware 19709**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**<br>**600 Fifth Street, N.W.**<br>**Washington, D.C. 20001**<br><br>**Serve: Patricia Lee, Esquire**<br>**General Counsel, WMATA**<br>**600 Fifth Street, N.W.**<br>**Washington, D.C. 20001**<br><br>**Defendant.** | **Case No. ________________** |

**COMPLAINT AND JURY DEMAND**
**(Wrongful Death: Negligence and Negligence Per Se;**
**Survival Action: Negligence and Negligence Per Se)**

COMES NOW Plaintiff Chimwala F. English, individually and in her capacity as personal and legal representative of her deceased father, Reginald Burrell, and for her Complaint against Defendant Washington Metropolitan Area Transit Authority ("WMATA") states as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit Authority Compact (the "Compact"), which establishes original jurisdiction in this Court over

WMATA matters pursuant to the Compact, Art. III § 4 and Art. XVI § 81, adopted in the District of Columbia Code at § 9-1107.10.

2. Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, insofar as the events giving rise to this action took place exclusively in the District of Columbia and WMATA is located in this federal judicial district.

**PARTIES**

3. Plaintiff Chimwala F. English ("Plaintiff," "Ms. English") is an adult resident of Delaware, residing at 917 Benalli Drive, Middletown, Delaware 19709. She brings this action individually and in her capacity as the personal and legal representative of the estate of her deceased father, Reginald Burrell ("Mr. Burrell"). On August 3, 2016, Ms. English was appointed Personal Representative of the estate of Mr. Burrell by the Superior Court of the District of Columbia, Probate Division (Macaluso, J.).

4. At the time of his death, Mr. Burrell was a sixty-four year old resident of Washington, D.C. He is survived by his three adult daughters: Plaintiff Chimwala F. English, Cantiese Lateefah Burrell, and Crystal Regina Burrrell.

5. Defendant WMATA (hereinafter "Defendant" or "WMATA"), created effective February 20, 1967, is an interstate compact agency and, by the terms of its enabling legislation, is an agency and instrumentality of the District of Columbia, State of Maryland, and Commonwealth of Virginia.

6. At all relevant times, WMATA was the owner of the transit bus being operated by its employee bus driver, Michael Bernardo Fletcher ("Mr. Fletcher"). At all relevant times, the bus operator, Mr. Fletcher, was acting in the course and scope of his employment and/or agency

with WMATA, thereby rendering WMATA vicariously liable for all of his tortious acts and omissions in causing the injuries and death of Reginald Burrell. WMATA is also liable for Mr. Fletcher's tortious acts and omissions pursuant to Article XV § 80 of the Compact and pursuant to WMATA's June 15, 2006, Revised Indemnification Policy, Resolution Number 2006-32.

**FACTS**

7. On the morning of September 3, 2015, Mr. Burrell, a frequent WMATA bus patron, boarded WMATA bus 2360 (hereinafter the "Bus"), owned by Defendant WMATA and permissively operated by Mr. Fletcher, its employee/agent.

8. At or around 6:15 a.m., Mr. Burrell informed the WMATA driver that he (Mr. Burrell) was not feeling well and would be departing the Bus at the next stop.

9. At or around 6:17 a.m., Mr. Fletcher brought the Bus to a stop in the right side curb lane at a marked bus stop in the 2800 block of Bladensburg Road, N.W., in Washington, D.C.

10. When Mr. Fletcher opened the Bus door for passengers to alight and to board, Mr. Burrell, who was feeling lightheaded and experiencing syncope, alighted from the front passenger side door of the Bus.

11. As Mr. Burrell stepped out of the Bus, he continued to experience syncope (loss in blood pressure leading to a fainting feeling) and leaned against the Bus in an effort to steady himself.

12. Mr. Fletcher closed the front passenger side door of the Bus, and then, without consulting his right outside rear view mirror or in any other manner whatsoever checking to ensure that it was safe for the Bus to proceed, began to drive away.

13. As a direct and proximate result of Mr. Fletcher commencing to drive the Bus away from the stop, Mr. Burrell was dragged under the rear right portion of the Bus and catastrophically injured. The entire incident was captured on the Bus' own camera system.

14. At no time prior to his departure from the bus stop was Mr. Fletcher even aware, as he should have been, that Mr. Burrell was leaning against the Bus in an effort to steady himself from the syncope he was suffering.

15. Even after the Bus ran over Mr. Burrell, Mr. Fletcher had no knowledge this had occurred, and he simply continued to drive the Bus as if nothing had happened.

16. At all relevant times herein prior his departure from the bus stop, Mr. Fletcher was easily able to view, via the use of multiple rear view mirrors, as well as simply looking out the Bus windows, Mr. Burrell's position and whereabouts, yet he completely and utterly failed to do so.

17. Mr. Burrell was emergently transported to Washington Hospital Center, where he remained until September 8, 2015, when he died as a direct and proximate result of the injuries suffered as a direct and proximate result of Mr. Fletcher's negligence as aforesaid.

## COUNT I
## (Wrongful Death: Negligence and Negligence *Per Se*)

18. Paragraphs 1-17 are incorporated by reference as if fully set forth herein.

19. This claim for wrongful death is brought by Ms. English as personal representative of the decedent, Mr. Burrell, pursuant to D.C. Code Ann. § 16-2701.

20. All acts and omissions of Defendant's agent, servant, and/or employee, Mr. Fletcher, were carried out within the scope of his employment and/or agency while performing a proprietary function as an employee of WMATA, rendering WMATA legally and statutorily liable.

21. The aforesaid incident was caused by and was the direct, sole, and proximate result of the negligence of Defendant's agent, servant, and/or employee.

22. Defendant, through its agent, servant, and/or employee, owed Mr. Burrell a duty of care to operate the WMATA bus in a proper fashion with the degree of care and skill that a reasonably competent driver would have exercised under similar circumstances.

24. At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2206.1, which provides: "No person shall start a vehicle which is stopped, standing, or parked unless and until the movement can be made with reasonable safety."

25. By Mr. Fletcher's acts and omissions as aforesaid, WMATA violated 18 D.C.M.R. § 2206.1, which was intended to protect persons such as Mr. Burrell.

26. At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2213.4, which provides: "An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle."

27. 18 D.C.M.R. § 2213.4 was enacted to prevent the type of incident that occurred (and to protect persons such as Mr. Burrell), and neither WMATA nor Mr. Fletcher can offer an explanation as to Mr. Fletcher's violation of such regulation, thereby rendering WMATA negligent *per se* (i.e., as a matter of law).

28. At all relevant times herein, federal law required that WMATA equip the Bus with two rear-vision mirrors, one at each side, firmly attached to the outside of the Bus, and so located as to reflect to the driver (Mr. Fletcher) a view of the highway to the rear, along both sides of the Bus. *See, 49 C.F.R. § 393.*80.

29. At all relevant times herein, the above-referenced rear-vision mirrors were required to meet the minimum requirements of FMVSSNo. 111 (49 C.F.R. § 571.111).

30. At all relevant times herein, federal law prohibited Mr. Fletcher from operating the Bus unless Mr. Fletcher was satisfied that the rear-vision mirrors were in good working order. *See, 49 C.F.R. 392.7.*

31. At all relevant times herein, Mr. Fletcher was required by federal law to make use of the rear-vision mirrors, as they were needed in order to determine whether it was safe to depart from the bus stop after Mr. Burrell's departure from the Bus. *Id.*

32. 49 C.F.R. § 392.7 was enacted to prevent the type of incident that occurred (and to protect persons such as Mr. Burrell), and neither WMATA nor Mr. Fletcher can offer an explanation as to Mr. Fletcher's violation of such regulation, thereby rendering WMATA negligent *per se* (i.e., as a matter of law).

33. At all relevant times herein, Mr. Fletcher was required to comply with WMATA's "Metrobus Standard Operating Procedures," dated December 2013 ("WMATA SOPs").

34. According to the Preface of the WMATA SOPs, "Adherence to the rules set forth in [the WMATA SOPs] is required of all personnel working in and around the bus system and will enable us to continue to provide the safest and most reliable system possible." *Id.*

35. At all relevant times herein, WMATA SOP 2.1, entitled "Mirror Adjustment," listed as its purpose "to define guidelines and procedures for WMATA personnel when adjusting the mirrors on Metrobuses for maximum observation and safe operation. With properly adjusted mirrors, the Operator can observe in and around the bus and immediately be aware of any situation that requires prompt defensive action."

36. At all relevant times herein, WMATA SOP 2.5.5 required that Mr. Fletcher "[a]djust the right side conventional mirror to see the right side of the [Bus] including the area outside the rear door."

37. At all relevant times herein, WMATA SOP 2.5.6 required that "[i]n the lower left corner of the [right side top] conventional mirror, [Mr. Fletcher] must see the area of the road approximately 12 inches forward of where the right rear tire contacts the road."

38. At all relevant times herein, WMATA SOP 2.5.7 required that "[s]ince the right side conventional mirror does not provide observations directly to the right of the [B]us, [Mr. Fletcher] must use the convex mirror and/or turn [his] head and move [his] body to confirm that there are no hazards for [B]us movement."

39. At all relevant times herein, WMATA SOP 2.5.8 required that Mr. Fletcher "[a]djust the right side convex mirror to see the side of the [B]us and a few feet of space beside the [B]us starting from the front door going toward the rear of the [B]us."

40. At all relevant times herein, WMATA SOP 2.5.8 also required that Mr. Fletcher be "able to see traffic, PEDESTRIANS, BICYCLISTS and fixed objects on the right side of the [B]us in [the right side convex] mirror."

41. At all relevant times herein, WMATA SOP 3.5, entitled "Procedures," mandated that Mr. Fletcher make proper observations by surveying the road, including mandatory observation of "every person…within the traffic pattern" such as Mr. Burrell so that Mr. Fletcher had ample opportunity to make timely decisions and respond.

42. At all relevant times herein, WMATA SOP 3.5.3 required that Mr. Fletcher check his mirrors regularly, i.e., "every three to five seconds."

43. At all relevant times herein, WMATA SOP 3.5.4 required that Mr. Fletcher "[b]e alert for PEDESTRIANS and BICYCLISTS at all times."

44. At all relevant times herein, WMATA SOP 3.5.8 mandated that Mr. Fletcher be "mindful that there were areas of the [B]us that [could] not be seen or inspected just by looking

in the mirrors" and that he needed to "move [his] body and head to make complete observations of bus blind spots."

45. At all relevant times herein, WMATA SOP 10.5.18, under the heading "Leaving the Service Stop/Prepare to Move," required that Mr. Fletcher "[b]e alert for approaching customers."

46. At all relevant times herein, WMATA SOP 10.5.19, under the heading "Leaving the Service Stop/Prepare to Move," required that Mr. Fletcher "[m]ove [his] head and use the mirrors to check that boarding and alighting customers are clear of the doors."

47. At all relevant times herein, WMATA SOP 10.5.22, under the heading "Leaving the Service Stop/Make Observation," required that Mr. Fletcher turn his head to the right, visually scan from the rear to the front of the Bus including his right side and interior rearview (overhead) mirrors to watch for customers approaching from the right and front (First Sweep).

48. At all relevant times herein, WMATA SOP 10.5.26, under the heading "Leaving the Service Stop/Make Observation," required that when it was unsafe to move after the First Sweep, Mr. Fletcher was required to make observations a second time from right to left then focus his attention ahead (Second Sweep).

49. At all relevant times herein, WMATA SOPs 15.5.34 and 15.5.35, under the heading "Pedestrian Accidents," required that Mr. Fletcher "[o]bserve in all directions before moving the Bus" and that he [p]roceed only when certain that PEDESTRIAN[s] will stay clear of the [B]us."

50. At all relevant times herein, WMATA SOP 15.5.44, under the heading "Pedestrian Accidents/Pedestrian Alongside Stands or Walks In Overhang Area of Bus," required that Mr. Fletcher "[s]top the [B]us and yield the right of way to PEDESTRIAN[s]."

51. Defendant, through its agent, servant, and/or employee, breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

(a) Failure to ensure the safety of its alighting passenger, Mr. Burrell, in the zone of safety at the subject bus stop and around the Bus itself.

(b) Failure to pay full time and attention to the operation of the WMATA bus;

(c) Operating and maintaining an unsafe and hazardous bus service environment;

(d) Failure to keep a proper lookout;

(e) Failure to properly handle Mr. Burrell's medical condition at the time he was riding on the Bus and at the time he departed the Bus;

(f) Continuing to operate the Bus despite being aware that Mr. Burrell was having medical issues and that he might need immediate medical attention;

(g) Continuing with regular bus service while being aware that failure to assist Mr. Burrell by continuing normal operation, after discharging him from the Bus could exacerbate his medical needs;

(h) Failure to operate the WMATA bus safely;

(i) Allowing Mr. Burrell, because of his medical condition, to be swept under the exited Bus right rear wheel while the Bus continued on normal operation;

(j) Stopping the Bus too far from the curb;

(k) Failure to follow safety protocols for departing a bus stop, including observing the curb area using the right-side Bus mirrors looking for pedestrians before departing the bus stop;

(l) Failure to refrain from moving the Bus until it was confirmed that Mr. Burrell was clear of the Bus's envelope of operations;

(m) Failure to adhere to the above-described WMATA SOPs, which reflect the applicable standards of care; and

(n) Violating the above-listed local and federal regulations without explanation.

52. Mr. Burrell's death was a direct and proximate result of the aforesaid wrongful acts and neglect of Defendant's agent, servant and/or employee.

53. Mr. Burrell acted properly in all respects and was free from negligence in connection with this incident.

54. As a direct and proximate result of the negligent and/or wrongful acts and/or omissions of Defendant's employee and/or agent, decedent's statutory beneficiaries have suffered financial loss; loss of gifts, contributions, services, care, and support of decedent; and incurred medical expenses, funeral services and expenses, and other losses and damages, which shall be proven at trial.

WHEREFORE, Ms. English, as personal and legal representative of decedent, Mr. Burrell, requests that the Court enter judgment in her favor and against Defendant, as follows: (1) compensatory damages in the amount of not less than Twenty-Five Million Dollars ($25,000,000.00), which shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

**COUNT II**
**(Survival Action: Negligence and Negligence *Per Se*)**

55. Paragraphs 1-54 are incorporated by reference as if fully set forth herein.

56. This survival action is brought by Ms. English as the personal and legal representative of the decedent, Mr. Burrell, pursuant to D.C. Code Ann. § 12-101, and is brought

on behalf of the decedent's estate. Ms. English was named personal and legal representative of the estate of her father, with the power to commence and maintain or defend suits and other legal proceedings, on August 3, 2016.

57. All acts and omissions of Defendant's agent, servant, and/or employee, Mr. Fletcher, were carried out within the scope of his employment and/or agency while performing a proprietary function as an employee of WMATA, rendering WMATA legally and statutorily liable.

58. The aforesaid incident was caused by and was the direct, sole, and proximate result of the negligence of Defendant's agent, servant, and/or employee.

59. Defendant, through its agent, servant, and/or employee, owed Mr. Burrell a duty of care to operate the WMATA bus in a proper fashion with the degree of care and skill that a reasonably competent driver would have exercised under similar circumstances.

60. At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2206.1, which provides: "No person shall start a vehicle which is stopped, standing, or parked unless and until the movement can be made with reasonable safety."

61. By Mr. Fletcher's acts and omissions as aforesaid, WMATA violated 18 D.C.M.R. § 2206.1, which was intended to protect persons such as Mr. Burrell.

62. At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2213.4, which provides: "An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle.

63. 18 D.C.M.R. § 2213.4 was enacted to prevent the type of incident that occurred (and to protect persons such as Mr. Burrell), and neither WMATA nor Mr. Fletcher can offer an

explanation as to Mr. Fletcher's violation of such regulation, thereby rendering WMATA negligent *per se* (i.e., as a matter of law).

64. At all relevant times herein, federal law required that WMATA equip the Bus with two rear-vision mirrors, one at each side, firmly attached to the outside of the Bus, and so located as to reflect to the driver (Mr. Fletcher) a view of the highway to the rear, along both sides of the Bus. *See, 49 C.F.R. § 393.*80.

65. At all relevant times herein, the above-referenced rear-vision mirrors were required to meet the minimum requirements of FMVSSNo. 111 (49 C.F.R. § 571.111).

66. At all relevant times herein, federal law prohibited Mr. Fletcher from operating the Bus unless Mr. Fletcher was satisfied that the rear-vision mirrors were in good working order. *See, 49 C.F.R. 392.7.*

67. At all relevant times herein, Mr. Fletcher was required by federal law to make use of the rear-vision mirrors, as they were needed in order to determine whether it was safe to depart from the bus stop after Mr. Burrell's departure from the Bus. *Id.*

68. 49 C.F.R. § 392.7 was enacted to prevent the type of incident that occurred (and to protect persons such as Mr. Burrell), and neither WMATA nor Mr. Fletcher can offer an explanation as to Mr. Fletcher's violation of such regulation, thereby rendering WMATA negligent *per se* (i.e., as a matter of law).

69. At all relevant times herein, Mr. Fletcher was required to comply with WMATA's "Metrobus Standard Operating Procedures," dated December 2013 ("WMATA SOPs").

70. According to the Preface of the WMATA SOPs, "Adherence to the rules set forth in [the WMATA SOPs] is required of all personnel working in and around the bus system and will enable us to continue to provide the safest and most reliable system possible." *Id.*

71. At all relevant times herein, WMATA SOP 2.1, entitled "Mirror Adjustment," listed as its purpose "to define guidelines and procedures for WMATA personnel when adjusting the mirrors on Metrobuses for maximum observation and safe operation. With properly adjusted mirrors, the Operator can observe in and around the bus and immediately be aware of any situation that requires prompt defensive action."

72. At all relevant times herein, WMATA SOP 2.5.5 required that Mr. Fletcher "[a]djust the right side conventional mirror to see the right side of the [Bus] including the area outside the rear door."

73. At all relevant times herein, WMATA SOP 2.5.6 required that "[i]n the lower left corner of the [right side top] conventional mirror, [Mr. Fletcher] must see the area of the road approximately 12 inches forward of where the right rear tire contacts the road."

74. At all relevant times herein, WMATA SOP 2.5.7 required that "[s]ince the right side conventional mirror does not provide observations directly to the right of the [B]us, [Mr. Fletcher] must use the convex mirror and/or turn [his] head and move [his] body to confirm that there are no hazards for [B]us movement."

75. At all relevant times herein, WMATA SOP 2.5.8 required that Mr. Fletcher "[a]djust the right side convex mirror to see the side of the [B]us and a few feet of space beside the [B]us starting from the front door going toward the rear of the [B]us."

76. At all relevant times herein, WMATA SOP 2.5.8 also required that Mr. Fletcher be "able to see traffic, PEDESTRIANS, BICYCLISTS and fixed objects on the right side of the [B]us in [the right side convex] mirror."

77. At all relevant times herein, WMATA SOP 3.5, entitled "Procedures," mandated that Mr. Fletcher make proper observations by surveying the road, including mandatory

observation of "every person…within the traffic pattern" such as Mr. Burrell so that Mr. Fletcher had ample opportunity to make timely decisions and respond.

78. At all relevant times herein, WMATA SOP 3.5.3 required that Mr. Fletcher check his mirrors regularly, i.e., "every three to five seconds."

79. At all relevant times herein, WMATA SOP 3.5.4 required that Mr. Fletcher "[b]e alert for PEDESTRIANS and BICYCLISTS at all times."

80. At all relevant times herein, WMATA SOP 3.5.8 mandated that Mr. Fletcher be "mindful that there were areas of the [B]us that [could] not be seen or inspected just by looking in the mirrors" and that he needed to "move [his] body and head to make complete observations of bus blind spots."

81. At all relevant times herein, WMATA SOP 10.5.18, under the heading "Leaving the Service Stop/Prepare to Move," required that Mr. Fletcher "[b]e alert for approaching customers."

82. At all relevant times herein, WMATA SOP 10.5.19, under the heading "Leaving the Service Stop/Prepare to Move," required that Mr. Fletcher "[m]ove [his] head and use the mirrors to check that boarding and alighting customers are clear of the doors."

83. At all relevant times herein, WMATA SOP 10.5.22, under the heading "Leaving the Service Stop/Make Observation," required that Mr. Fletcher turn his head to the right, visually scan from the rear to the front of the Bus including his right side and interior rearview (overhead) mirrors to watch for customers approaching from the right and front (First Sweep).

84. At all relevant times herein, WMATA SOP 10.5.26, under the heading "Leaving the Service Stop/Make Observation," required that when it was unsafe to move after the First

Sweep, Mr. Fletcher was required to make observations a second time from right to left then focus his attention ahead (Second Sweep).

85. At all relevant times herein, WMATA SOPs 15.5.34 and 15.5.35, under the heading "Pedestrian Accidents," required that Mr. Fletcher "[o]bserve in all directions before moving the Bus" and that he [p]roceed only when certain that PEDESTRIAN[s] will stay clear of the [B]us."

86. At all relevant times herein, WMATA SOP 15.5.44, under the heading "Pedestrian Accidents/Pedestrian Alongside Stands or Walks In Overhang Area of Bus," required that Mr. Fletcher "[s]top the [B]us and yield the right of way to PEDESTRIAN[s]."

87. Defendant, through its agent, servant, and/or employee, breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

(a) Failure to ensure the safety of its alighting passenger, Mr. Burrell, in the zone of safety at the subject bus stop and around the Bus itself.

(b) Failure to pay full time and attention to the operation of the WMATA bus;

(c) Operating and maintaining an unsafe and hazardous bus service environment;

(d) Failure to keep a proper lookout;

(e) Failure to properly handle Mr. Burrell's medical condition at the time he was riding on the Bus and at the time he departed the Bus;

(f) Continuing to operate the Bus despite being aware that Mr. Burrell was having medical issues and that he might need immediate medical attention;

(g) Continuing with regular bus service while being aware that failure to assist Mr. Burrell by continuing normal operation, after discharging him from the Bus could exacerbate his medical needs;

(h) Failure to operate the WMATA bus safely;

(i) Allowing Mr. Burrell, because of his medical condition, to be swept under the exited Bus right rear wheel while the Bus continued on normal operation;

(j) Stopping the Bus too far from the curb;

(k) Failure to follow safety protocols for departing a bus stop, including observing the curb area using the right-side Bus mirrors looking for pedestrians before departing the bus stop;

(l) Failure to refrain from moving the Bus until it was confirmed that Mr. Burrell was clear of the Bus's envelope of operations;

(m) Failure to adhere to the above-described WMATA SOPs, which reflect the applicable standards of care; and

(n) Violating the above-listed local and federal regulations without explanation.

88. Mr. Burrell's death was a direct and proximate result of the aforesaid wrongful acts and neglect of Defendant's agent, servant and/or employee.

89. Mr. Burrell acted properly in all respects and was free from negligence in connection with this incident.

90. All acts and omissions of Defendant's agent, servant, and/or employee, Mr. Fletcher, were carried out within the scope of his employment and/or agency while performing a proprietary function as an employee of WMATA, rendering WMATA legally and statutorily liable.

91. The aforesaid incident was caused by and was the direct, sole, and proximate result of the negligence and/or negligence *per* se of Defendant's agent, servant, and/or employee, Mr. Fletcher.

92. Defendant, through its agent, servant, and/or employee, owed Mr. Burrell a duty of care to operate the WMATA bus in a proper fashion with the degree of care and skill that a reasonably competent driver would have exercised under similar circumstances.

93. Mr. Burrell's death was a direct and proximate result of the aforesaid wrongful acts and neglect of Defendant's agent, servant and/or employee, Mr. Burrell.

94. Mr. Burrell acted properly in all respects and was free from negligence in connection with this incident.

95. Between the time when the Bus first struck Mr. Burrell, and the time of his death more than five days later, Mr. Burrell was conscious, aware of his impending death, and/or suffered extreme conscious physical, mental, and emotional pain and suffering.

96. As a direct and proximate result of the negligence and/or negligence *per se* of Defendant's employee and/or agent, the decedent, Mr. Burrell, suffered extreme conscious physical pain and bodily injury, disfigurement, and/or deformity, physical and emotional suffering, inconvenience and discomfort, fear, and mental anguish prior to his untimely and horrific death.

97. As a further direct and proximate result of the negligence of Defendant's employee and/or agent, the decedent, Mr. Burrell, incurred medical and hospital expenses exceeding $246,000.00, as well as past and future lost income, lost earnings, and loss of earning capacity.

WHEREFORE, Ms. English, in her capacity as personal representative of decedent, Mr.Burrell, requests that the Court enter judgment in her favor and against Defendant, as follows: (1) compensatory damages in the amount of not less than Twenty-Five Million Dollars ($25,000,000.00), which shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

**JURY TRIAL REQUESTED**

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.

Respectfully submitted,

CHIMWALA F. ENGLISH, Individually and as Personal
Representative of the Estate of Reginald Burrell, Deceased

By:

Peter C. Grenier, Esq., D.C. Bar #418570
Kenneth J. LaDuca, D.C. Bar #1031173
GRENIER LAW GROUP PLLC
1400 L Street, N.W., Suite 420
Washington, D.C. 20005
pgrenier@grenierlawgroup.com
kladuca@grenierlawgroup.com
Tel: (202) 768-9600
Fax: (202) 768-9604

Dated: November 28, 2016