# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| CHIMWALA F. ENGLISH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 16-02335 (ABJ/RMM) |
| | ) |
| WASHINGTON METROPOLITAN AREA | ) |
| TRANSIT AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

_____

## MEMORANDUM OPINION

Three discovery motions are pending before the Court. Plaintiff Chimwala F. English ("Plaintiff" or "Ms. English") filed a Motion to Compel [ECF No. 12], which challenges the completeness of Defendant Washington Metropolitan Area Transit Authority's ("Defendant" or "WMATA") responses to certain interrogatories and requests for production of documents. WMATA filed a Motion for Protective Order [ECF No. 15], which seeks to prohibit Ms. English from taking a Federal Rule of Civil Procedure 30(b)(6) deposition of designated WMATA employees. Ms. English opposed that motion and filed a Cross-Motion to Compel WMATA's Deposition [ECF No. 17], which seeks to compel Defendant WMATA to designate and produce a witness to appear and testify at the 30(b)(6) deposition. The District Judge presiding over this case has referred all discovery disputes to the undersigned Magistrate Judge pursuant to Local Civil Rule 72.2(a). *See* Order, ECF No. 21. Having reviewed the parties' written submissions, the arguments presented at the July 17, 2017 motions hearing, and the entire record herein, the Court will grant-in-part and deny-in-part Ms. English's Motion to Compel [ECF No. 12], deny Defendant's Motion for Protective Order [ECF No. 15], and grant Ms. English's Cross-Motion to Compel [ECF No. 17] for the reasons set forth below.

# BACKGROUND

## Factual and Procedural History[1]

On the morning of September 3, 2015, Reginald Burrell boarded WMATA Bus 2360. Compl. ¶ 7, ECF No. 1. Mr. Burrell felt lightheaded, and subsequently informed the WMATA bus driver that he was not feeling well. *Id.* ¶¶ 8, 10. Mr. Burrell exited the bus at the next stop from the passenger side door. *Id.* Upon exiting, Mr. Burrell attempted to steady himself by leaning on the side of the bus. *Id.* ¶ 11. Shortly thereafter, the bus driver began to drive away from the curb. *Id.* ¶ 12. Mr. Burrell was dragged under the rear right portion of the bus and injured. *Id.* ¶ 13. After the accident Mr. Burrell was taken to Washington Hospital Center, where he remained until he died on September 8, 2015. *Id.* ¶ 17.

On November 28, 2016, Ms. English, daughter of Reginald Burrell, filed this action against WMATA alleging negligence and negligence *per se* in claims for wrongful death and a survival action. *See* Compl. Ms. English asserts that the incident on September 3, 2015 ("the Incident") was the direct, sole, and proximate result of the negligence of WMATA's bus driver. *Id.* ¶¶ 21, 58. Ms. English alleges that the bus driver owed Mr. Burrell "a duty of care to operate the WMATA bus in a proper fashion with the degree of care and skill that a reasonably competent driver would have exercised under similar circumstances." *Id.* at ¶¶ 22, 59. Ms. English contends that WMATA, through its bus driver, breached the applicable duties and standards of care owed to Mr. Burrell and thus was negligent, negligent *per se*, or both. *Id.* at ¶¶ 51, 87. WMATA admits that at all relevant times the bus driver was acting within the scope of

---

[1] Given the procedural posture of the case, the Court relies on the facts alleged in the Complaint.

his employment as a WMATA bus operator, but denies that it or the driver was negligent. Answer 2–3, ECF No. 5.

In April 2017, after the parties notified the Court that they had a pending discovery dispute, Judge Amy Berman Jackson referred that dispute to the undersigned for resolution. *See* Referral to Magistrate Judge Order, ECF No. 9. The parties filed a joint Status Report outlining the nature and scope of outstanding discovery disputes, and the undersigned subsequently held a Telephonic Discovery Conference. *See* Status Report, ECF No. 10; April 19, 2017 Minute Entry. At that conference, the Court set a schedule for briefing of the outstanding discovery disputes.

Ms. English subsequently filed a Motion to Compel [ECF No. 12], WMATA sought a Protective Order to preclude a Rule 30(b)(6) deposition [ECF No. 15], and Ms. English cross-moved to compel WMATA to produce a witness for the 30(b)(6) deposition [ECF No. 16]. The Motion to Compel concerns WMATA's responses to a number of Ms. English's interrogatories and requests for production of documents. In that motion, Ms. English requests that WMATA produce a privilege log that fully complies with the Federal Rules of Civil Procedure, requests an *in camera* review of redacted documents to ensure that all non-privileged information has been released to Plaintiff, and seeks to compel WMATA to provide relevant and discoverable information and documents in response to her interrogatories and requests for production. *See* Pl.'s Mot. to Compel 1–2, ECF No. 12.

The Motion for Protective Order seeks to prohibit Ms. English from taking a Rule 30(b)(6) deposition for which WMATA was asked to designate one or more witnesses to testify regarding eighteen topics. *See* Mot. for Protective Order of WMATA 1 (Def.'s Mot. for Protective Order), ECF No. 15 & Ex. 1, ECF No. 15-2 (Notice of Fed. R. Civ. P. 30(b)(6) Dep.

of Def. Wash. Metro. Area Transit Auth.). In its motion, WMATA challenges the scope of Ms.

English's request for a 30(b)(6) deposition and questions the deposition's purpose, indicating

that it duplicates other discovery requests and appears intended to burden or harass. *See* Def.'s

Mot. for Protective Order 2. In her response, Ms. English cross-moves to compel the deposition.

*See* Pl.'s Opp'n to Def.'s Mot. for Protective Order and Cross-Mot. to Compel WMATA's Dep.

9, ECF Nos. 16 & 17.

On July 6, 2017, Judge Jackson expanded the referral to encompass the resolution of all

discovery disputes. *See* Order, ECF No. 21. The undersigned held a motions hearing on July 17,

2017, and on July 18, 2017 requested supplemental briefing regarding the applicability of the

work product protection. *See* Order, ECF No. 25.

**LEGAL STANDARDS**

**I.**     **<u>Motion to Compel Responses to Interrogatories and Requests for Production</u>**

Under Federal Rule of Civil Procedure 37, a party seeking discovery through an

interrogatory under Rule 33 or the production of documents under Rule 34, and who believes

that the opposing party has failed to meet its obligations under the relevant Rules, may — after

conferring in good faith with the opposing party — seek to compel a response. *See* Fed. R. Civ.

P. 37(a)(1), 37(a)(3)(B)(iii)–(iv). To satisfy Rule 33, "[a] party to whom an interrogatory is

propounded 'must provide true, explicit, responsive, complete, and candid answers.'"

*Guantanamera Cigar Co. v. Corporacion Habanos*, *S.A.,* 263 F.R.D. 1, 7 (D.D.C. 2009)

(quoting *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007)); *see* Fed. R.

Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered

separately and fully in writing under oath."). A party served with Rule 34 requests for

production must produce or allow inspection of the requested records unless it has asserted a

viable objection.  *See* Fed. R .Civ. P. 34(b)(2).  Rule 37 further provides that evasive or incomplete answers or responses to written discovery requests will be treated as a failure to answer or respond.  Fed. R. Civ. P. 37(a)(4).

A party may serve written interrogatories or requests for production provided such requests fall within the scope of Rule 26(b).  Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)"); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)").  Rule 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Where a relevance objection has been raised, the moving party seeking to compel discovery "must demonstrate that the information sought to be compelled is discoverable." *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 30 (D.D.C. 2007); *see also Felder v. Wash. Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 224 (D.D.C. 2015).  Once that showing has been made, "the burden shifts to the non-moving party 'to explain why discovery should not be permitted.'"  *Felder*, 153 F. Supp. 3d at 224 (quoting *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007)); *see also United States v. All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016).

## II.    <u>Motion for Protective Order</u>

Under Federal Rule of Civil Procedure 26, a party may move for a protective order "on matters relating to a deposition."  Fed. R. Civ. P. 26(c)(1).  "[F]or good cause," the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *Id.*  The party requesting the protective order bears the burden of showing good cause.  *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).  In meeting this

burden, the party "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander*, 186 F.R.D. at 75; *see also Huthnance v. Dist. of Columbia*, 255 F.R.D. 285, 296 (D.D.C. 2008).

## DISCUSSION

"The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery." *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004). Specifically, Rule 26 permits parties to:

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also Pederson v. Preston*, 250 F.R.D. 61, 63–64 (D.D.C. 2008). The discovery objections at issue in the pending motions primarily concern privilege and relevance. Each motion will be addressed in turn below.

## I.    <u>Motion to Compel Further Responses To Written Discovery</u>

Ms. English contends that WMATA has "failed to comply with its discovery obligations and wrongfully withheld plainly discoverable materials." Pl.'s Mot. to Compel 1, ECF No. 12. Specifically, Ms. English moves to compel the following:

- A privilege log that fully complies with Federal Rule of Civil Procedure 26(b)(5)(A);

- Disclosure of any non-privileged material that WMATA redacted from its discovery responses;

- Production of all documents in response to Ms. English's Requests for Production 3, 7, 10, 11, 12, 14, 15, 18, and 24;

- Substantive responses to Ms. English's Interrogatories 2, 5, 6, 8, 9, 11, 12, 13, 19, 21, and 23; and

- A response to Plaintiff's second set of interrogatories.

Pl.'s Mot. to Compel 1–2; Pl.'s Mem. in Support of Mot. to Compel ("MTC Mem."), ECF No. 12-1.

Ms. English's request for a privilege log that fully complies with the Federal Rules of Civil Procedure is moot because WMATA provided a revised privilege log under seal, to both Ms. English and the Court, on July 13, 2017.  *See* Am. Privilege Log, ECF No. 23.[2]  The portion of the Motion to Compel that seeks a response to Plaintiff's second set of interrogatories also has been rendered moot by intervening events; at the July 17, 2017 Motions Hearing, Plaintiff's counsel advised the Court that WMATA had responded to Plaintiff's Second Set of Interrogatories.  Therefore, the following analysis addresses only the dispute regarding WMATA's response to Ms. English's requests for production of documents and her first set of interrogatories.

### A.    WMATA's Assertion of Privileges to Redact Responsive Documents

Ms. English challenges WMATA's redaction of documents that are responsive to Plaintiff's Interrogatory 2.  *See* MTC Mem. 5.  Plaintiff's Interrogatory 2 seeks the following:

**Interrogatory 2**: Identify and describe in detail all information regarding the Incident communicated or provided by you (or anyone acting on your behalf) to, or for the benefit of, the United States Department of Transportation, including the Federal Motor Carrier Safety Administration, relating, reflecting or referring to the Incident.

---

[2]   The revised privilege log was submitted in response to this Court's July 11, 2017 Order directing WMATA to file a privilege log that "state[s] the basis upon which the privilege is claimed, the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided." Order, ECF No. 22 (quoting *Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009)) (internal quotation marks omitted).

MTC Mem. 5. The redacted documents responsive to that interrogatory include documents from an "investigative file" produced to Ms. English as part of WMATA's initial disclosures and a Safety Report later produced by WMATA in response to Plaintiff's Interrogatory 2. *See id.* at 5–6.

WMATA relies primarily on the self-evaluative privilege to redact information from the responsive documents, and also has redacted information that it describes as work product, "post-remedial measures," and "Confidential Employee Numbers." *See* Am. Privilege Log; *see also* Opp'n to Pl.'s Mot. to Compel Ex. 1 ("Privilege Log"), ECF No. 13-1. Ms. English disputes the applicability of the privileges and protections asserted. *See* MTC Mem. 5–7. Accordingly, Ms. English requested that the Court undertake an *in camera* review to determine whether the redacted information is privileged and then order WMATA to release to Plaintiff any information that was improperly withheld. *See id.*

When a party claims a privilege as the basis for withholding documents, that party "bears the burden of proving the communications are protected." *Felder*, 153 F. Supp. 3d at 224 (quoting *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)); *see also United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1081 (D.C. Cir. 2001). To carry that burden, the party asserting the privilege must "present the underlying facts demonstrating the existence of the privilege," and "conclusively prove each element of the privilege." *In re Lindsey*, 158 F.3d at 1270 (internal quotation marks and citation omitted). "[T]he proponent of a privilege . . . must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 127 (D.D.C. 2012) (internal quotation marks and citation omitted). If the party asserting the privilege fails to present sufficient facts to allow the Court to "state *with reasonable certainty* that the privilege

applies, this burden is not met." *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) (emphasis added).

### 1.  Self-Evaluative Privilege

WMATA relies principally on the self-evaluative privilege as justification for its redaction of documents from the investigative file.  *See* Am. Privilege Log 1–2; Privilege Log 1–2.  The self-evaluative privilege "encourage[s] confidential self-analysis and self-criticism" by shielding from discovery documents that reflect the conclusions an entity has reached as part of its internal investigation or evaluation of certain incidents or conduct.  *First E. Corp. v. Mainwaring*, 21 F.3d 465, 467 (D.C. Cir. 1994) (quoting *TRW, Inc.,* 628 F.2d at 210) (internal quotation marks omitted); *see also Felder*, 153 F. Supp. 3d at 224–25.  The privilege reflects courts' recognition that "it is not realistic to expect candid expressions of opinion or suggested changes in policies, procedures or processes knowing that such statements or suggestions may very well be used against colleagues and employees in subsequent litigation." *Felder*, 153 F. Supp. 3d at 225 (citing *Bradley v. Melroe Co.,* 141 F.R.D. 1, 3 (D.D.C. 1992)).

This Court first recognized the self-evaluative privilege in *Bredice v. Doctors Hospital*, where the privilege was held applicable to hospital staff meeting notes documenting physicians' retrospective reviews and critiques of the treatment and care provided by their colleagues.  50 F.R.D. 249, 251 (D.D.C. 1970).  In *Bredice*, the Court found "an overwhelming public interest in having those staff meetings held on a confidential basis so that the flow of ideas and advice can continue unimpeded," and therefore concluded that the records should not be discoverable absent "extraordinary circumstances." *Id.*  Courts evaluating claims of the self-evaluative privilege have considered similar public policy concerns, assessing whether the value of candid and comprehensive self-evaluations outweighs a requestor's need for the information. *See Martin v.*

*Potomac Elec. Power Co.*, Nos. 86-0603, 87-1177, 87-2094, 88-0106, 1990 WL 158787, at *3

(D.D.C. May 25, 1990) (unpublished); *Wainwright v. Wash. Metro. Area Transit Auth.*, 163

F.R.D. 391, 396; *see also Bradley*, 141 F.R.D. at 3.

      Although parties rarely succeed in invoking the self-evaluative privilege, the cases where

the privilege has been applied share common traits.  First, the D.C. Circuit has suggested that the

self-evaluative privilege should apply only in cases that implicate public health or safety.

*Mainwaring*, 21 F.3d at 467 n.1; *see also Wade v. Wash. Metro. Area Transit Auth.*, No. Civ. 01-

0334, 2006 WL 890679, at *5 (D.D.C. Apr. 5, 2006) (citing *Mainwaring*) (noting that "the [D.C.

Circuit] would be reluctant to expand [the self-evaluative privilege] beyond cases involving

public health or safety").  Second, the applicability of the privilege frequently turns on whether a

"document was created for the purpose of retrospective self-criticism to improve health and

safety."  *Felder*, 153 F. Supp. 3d at 227; *see also Wade,* 2006 WL 890679, at *5 (citing

*Mainwaring*, 21 F.3d at 467 n.1); *Wainwright*, 163 F.R.D. at 396.  Members of this Court also

have required that the privileged document be "a critique submitted as part of a mandatory

government report."  *Wainwright.,* 163 F.R.D. at 396; *see also Mahnke v. Wash. Metro. Area

Transit Auth.*, 821 F. Supp. 2d 125, 150 n.16 (D.D.C. 2011) (quoting *Wainwright*'s standard but

declining to rule on the applicability of a self-evaluative privilege); *Martin*, 1990 WL 158787, at

*3; *cf. Felder*, 153 F. Supp. 3d at 227 (questioning whether a document must be submitted as

part of a mandatory government report to qualify for the self-evaluative privilege).  Finally, the

privilege applies only to the conclusions, subjective judgments, or mental impressions reached

during the evaluative process, and "does not protect purely factual material appearing alongside

self-critical analysis."  *Felder*, 153 F. Supp. 3d at 225; *see also Martin*, 1990 WL 158787, at *3

n.4.  In these cases, courts have concluded that the privilege is necessary to avoid a "chilling

effect" that otherwise might hinder a company or public entity from engaging in self-critical analysis. *Felder*, 153 F. Supp. 3d at 225 (quoting *Granger v. Nat'l R.R. Passenger Corp.*, 116 F.R.D. 507, 509 (E.D. Pa. 1987)).

WMATA invokes the self-evaluative privilege to redact portions of reports and other documents prepared as part of its post-accident investigation of the Incident. *See* Am. Privilege Log; Privilege Log. WMATA argues that "[r]equiring [it] to produce the mental impressions, conclusions and opinions of WMATA personnel and consulting experts who evaluated the incident and made decisions on how to make the work environment safer would chill and deter future evaluations aimed at improving WMATA's safety." Opp'n to Pl.'s Mot. to Compel 3–4 ("Def.'s Opp'n"), ECF No. 13. Citing precedent applying the self-evaluative privilege to recommendations and conclusions made during post-accident evaluations, WMATA contends that it properly redacted portions of records from the investigative file that reflect: (1) recommendations, conclusions, and the results of WMATA's investigation or review;[3] and (2) post-accident remedial measures and actions taken by WMATA.[4] *See Felder*, 153 F. Supp. 3d at 226–28 (finding that the self-evaluative privilege applied to recommendations and conclusions in a disciplinary memorandum that was prepared as part of a post-accident safety evaluation); *Gilbert v. WMATA*, No. 85-535, slip op. at 1 (D.D.C. Sept. 3, 1986) (applying self-evaluative privilege to materials from safety evaluation after finding that the "public policy exception encouraging evaluations and improvements to safety outweighs the plaintiff's needs for the materials sought").

---

[3]   This category pertains to information that may be found in the Accident Report Form and WMATA Dept. of Safety Final Report of Investigation.
[4]   This category pertains to information that may be found in the Accident Report Form, Remedial Bus Operator Training Form, WMATA Dept. of Safety Final Report of Investigation

Ms. English concedes that the self-evaluative privilege applies to any self-critical analysis and conclusions that appear in the redacted documents, and therefore does not challenge WMATA's redactions of such information. Instead, she seeks only "*all factual information* that may be contained in the redacted reports WMATA has produced." Pl.'s Reply in Further Support of Pl.'s Mot. to Compel Disc. Resps. 3 ("Pl.'s Reply"), ECF No. 14 (emphasis in original); *see also* MTC Mem. 6–7.

Given that Ms. English does not challenge WMATA's redaction of any self-critical analysis and conclusions, the Court need not determine whether the self-evaluative privilege protects those portions of the redacted documents.[5] Instead this case presents the narrower question of whether the redactions include factual information that is outside the scope of the self-evaluative privilege. WMATA contends that all the redacted information is evaluative and thus not discoverable.

Distinguishing between factual and evaluative information is more complex than it may initially appear. While some information may be purely factual or purely evaluative, other information falls on a continuum between those two extremes. For example, a document may contain factual information regarding actions an entity takes in response to an incident that, if disclosed, would implicitly reveal the self-critical analysis, evaluation, or conclusions upon which the decision to take those actions was based. Compelling the disclosure of such information would defeat the purpose of the self-evaluative privilege. On the other hand, some

---

[5] Thus the Court need not and will not decide whether to follow *Wainwright* and limit the applicability of the self-evaluative privilege to documents that contain "a critique submitted as part of a mandatory government report." 163 F.R.D. at 396. However, it appears that WMATA could have provided evidence demonstrating that the documents at issue were prepared for such a purpose. *See, e.g.*, *Felder*, 153 F. Supp. 3d at 227 (applying self-evaluative privilege to WMATA disciplinary memorandum and safety reports prepared pursuant to WMATA's "legally-mandated obligation to investigate [an] accident").

actions responsive to an incident may be as consistent with a positive self-evaluation as with a negative one; in those cases, disclosing the action would not reveal the conclusions drawn in the underlying self-critical analysis. Accordingly, when determining whether the self-evaluative privilege applies to the redacted documents, the Court focused on the impact that disclosure of the redacted material would have, and applied the privilege to information whose disclosure would reveal WMATA's self-critical evaluation, conclusions, or safety recommendations.

The Court's *in camera* review of the redacted documents, analyzed under the foregoing legal standards, reveals that the self-evaluative privilege applies to some, but not all, of the information that WMATA has redacted. While reviewing the claim of privilege, the Court also remained mindful that privileges generally are narrowly construed and that WMATA bears the burden of proving that the self-evaluative privilege applies here. *See United States v. Nixon*, 418 U.S. 683, 710 (1974) ("Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."); *In re Sealed Case,* 676 F.2d 793, 806–07 (D.C. Cir. 1982) (noting that "courts are careful to construe recognized privileges narrowly"); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The specific rationale for applying or disallowing the privilege is explained below on a document-by-document basis.

### Accident Report Form

WMATA has redacted several sections of the Accident Report Form. *See* ECF No. 12-4 at 3–6; ECF No. 23-1 at 2–5.[6] Some of the redacted material contains the conclusions drawn in

---

[6] WMATA submitted the redacted documents in multiple filings. *See* ECF No. 12-4 (redacted documents from investigative file); ECF No. 12-8 (redacted Final Report of Investigation); ECF No. 23-1 (redacted documents from investigative file annotated to clearly identify the asserted privilege). This Opinion's citations to page numbers refer to the ECF page numbers of a filing

WMATA's evaluation of the Incident, the disclosure of which would reveal WMATA's internal self-critical analysis; the self-evaluative privilege shields that information from discovery. *See Felder*, 153 F. Supp. 3d at 226–28 (finding that the self-evaluative privilege applied to recommendations and conclusions in a disciplinary memorandum that was prepared as part of a post-accident safety evaluation); *Gilbert v. WMATA*, No. 85-535 (D.D.C. Oct. 9, 1986) (recognizing that the privilege applies to WMATA safety evaluations and candid self-criticism of WMATA employees). Accordingly, WMATA properly redacted the following portions of the Accident Report Form: on page three of ECF No. 12-4, the first four boxes in the line that commences with box number 1 and all of box number 16 except the last five words; on page four of ECF No. 23-1, all of the redacted material;[7] and on page six of ECF No. 12-4, all of the redacted material except for the four lines of text in the final redacted paragraph.

Some of the redacted material simply identifies the nature of certain proposed remedial actions and contains no self-critical analysis. WMATA argues that its recommendations and proposed remedial actions are privileged because their disclosure "would chill and deter future evaluations aimed at improving WMATA's safety." Def.'s Opp'n 3–4. But the proposed remedial actions at issue would logically follow any accident, regardless of who is at fault. Consequently, the fact that WMATA recommended or took those actions does not reveal the

that contains WMATA's redacted or annotated redacted documents, and do not refer to the individual pagination that may appear within each redacted document. As ECF No. 23-1 was filed under seal, the Court will cite to that filing only if the redactions differ from those in WMATA's publicly docketed submission of the redacted documents.

[7] On page four of ECF No. 23-1, WMATA also could have invoked the self-evaluative privilege to redact certain language in the paragraph ("Redacted Paragraph") that immediately follows the paragraph ending in the words, "Medical Examination." In the Redacted Paragraph, WMATA could have redacted the language which follows the last comma of that paragraph. Although WMATA redacted that entire paragraph in an earlier production, WMATA disclosed it in its more recent submission. *Compare* ECF No. 12-4 at 5 *with* ECF No. 23-1 at 4.

nature or outcome of WMATA's self-critical assessment of the Incident, and disclosing those recommendations should not chill candid and objective self-evaluation. This material is, therefore, outside the scope of the self-evaluative privilege and is discoverable unless another privilege applies. *See generally Felder*, 153 F. Supp. 3d at 228 (concluding discipline imposed by WMATA was factual and thus must be disclosed to the plaintiff); *Sutton v. Wash. Metro. Area Transit Auth.*, Civil Action No. 07-1197, slip op. at 3–4 (D.D.C. Dec. 17, 2007) (concluding self-evaluative privilege did not extend to factual information concerning actions WMATA took after an accident). Accordingly, WMATA improperly invoked the self-evaluative privilege to withhold the following portions of the Accident Report Form: on page three of ECF No. 12-4, the last five words in box numbers 16; and on page six of ECF No. 12-4, the four lines of text located above "Employee's Comments" and at the bottom of the redacted section.

WMATA also redacted portions of the Accident Report Form containing information about the driver's appeal rights. WMATA already has disclosed to Ms. English that the bus driver filed an appeal, by releasing with minimal redactions a document titled "Accident Appeal Form" wherein the driver states that he "disagree[s] with the rating of the accident." ECF No. 12-4 at 3. That disclosure waived any self-evaluative privilege that arguably might protect information regarding the driver's right to appeal. *See generally In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (noting, in the context of executive and deliberative process privileges, that the release of a document waives the privilege for the document or information specifically released); *Ivy Sports Med., LLC v. Sebelius*, No. 11-CV-1006 RLW, 2012 WL 5248176, at *2 (D.D.C. Oct. 24, 2012) (unpublished) (noting waiver of deliberative process privilege where information was made public). Even if WMATA had not waived the privilege, disclosing the

driver's right to appeal would not reveal any self-critical analysis. Accordingly, WMATA improperly relied on the self-evaluative privilege to redact the following portions of the Accident Report Form: on page three of ECF No. 12-4, box numbers 14 and 15 and the row of text between box 15 and box 16.

### Report for Incident

WMATA also invoked the self-evaluative privilege as a basis for redacting two partial lines of text in the "Report for Incident." *See* ECF No. 12-4 at 7. The text following "Response Level," if disclosed, would reveal information about the conclusions drawn during WMATA's assessment of the Incident; therefore it was properly redacted pursuant to the self-evaluative privilege. *See id.* However, the information redacted in the text immediately following "B47546" would not reveal any analysis or conclusions, self-critical or otherwise; therefore that text must be disclosed to Ms. English unless another privilege protects it.[8] *See id.*

### Remedial Bus Operator Training Form

WMATA also contends that the self-evaluative privilege applies to portions of the "Remedial Bus Operator Training Form." *See* ECF No. 12-4 at 14–15. The first redacted line on pages 14 and 15, immediately below "Activity Details," simply duplicates information that appears in unredacted form elsewhere in the document. Therefore WMATA has waived the self-evaluative privilege even if it otherwise might have protected this information. Moreover, these lines contain factual information regarding training, and the fact that training may have occurred does not disclose any self-critical analysis. Similarly, the remaining redactions of text under the categories "Start Date", "End Date", "Date", "Start Time", "End Time", "Time Zone", and

---

[8] WMATA asserts the work product protection for all the information that it seeks to shield under the self-evaluative privilege. *See* Privilege Log at 2; Am. Privilege Log at 2. The applicability of that privilege will be addressed below.

"Location" consist of purely factual information which, if disclosed, would not reveal any self-critical analysis, evaluation, or conclusions. Accordingly, this information is not protected by the self-evaluative privilege and must be disclosed to Ms. English unless the work product protection applies.[9]

### WMATA Dept. of Safety Final Report of Investigation

WMATA also asserts the self-evaluative privilege as a basis for redacting portions of the "Final Report of Investigation. *See* ECF No. 12-8 at 2–7. The redacted five paragraphs under the heading "Investigation" consist almost entirely of factual information concerning the background of the driver and the steps WMATA took to investigate the Incident. If disclosed, those facts would reveal no self-critical analysis, evaluation, or conclusions. The only evaluative information within the redacted paragraphs on page five of ECF No. 12-8 appears in the last sentence, immediately preceding the heading "Operator of Metrobus #2360 thirty day work history." That sentence describes the conclusions WMATA reached regarding the driver's actions, and therefore was properly redacted. The remaining redacted sentences on this page, however, are not evaluative and therefore must be disclosed to Ms. English unless the work product protection applies.

Most, but not all, of the remaining redactions in this document were proper. The text under the headings "Findings/Analysis" and "Conclusion" contains WMATA's substantive analysis and conclusions, which epitomize the type of information protected by the self-evaluative privilege. *See* ECF No. 12-8 at 7. However, the privilege protects only a portion of the text under the final heading on page seven, titled "Mitigation to Prevent Re-Occurrence."

---

[9]  WMATA asserts the work product protection for all the information that it seeks to shield under the self-evaluative privilege. *See* ECF No. 23-1 at 12–13; *see also* Privilege Log at 2; Am. Privilege Log at 2. The applicability of that privilege will be addressed below.

*See* ECF No. 12-8 at 7.  The last nine words of the first bullet point under that heading contain facts that implicitly reveal one of the conclusions reached by WMATA, and therefore are within the scope of the self-evaluative privilege.  The remainder of the redacted information under this heading identifies future actions that likely would be pursued regardless of the conclusions WMATA reached when evaluating the cause of the Incident.  Therefore the self-evaluative privilege does not apply to that portion of the report and the redacted information should be disclosed to Ms. English unless the work product protection applies.

Finally, Ms. English asks the Court to compel WMATA to disclose the names of the individuals involved in generating and approving the Safety Report; the redacted report simply attributes the drafting, review, and approval of the report to individuals designated by the notation "SAFE" and a number in a box at the bottom of each page.  *See* MTC Mem. 6.  The Court's *in camera* review has shown, however, that those individuals' names do not appear in the unredacted document; the original unredacted document also identifies those individuals only with the notation "SAFE" and a number.  Therefore this information was not withheld under the self-evaluative privilege.

### 2. Work Product Protection

WMATA asserts the work product protection as an alternative basis for withholding all of the information it redacted under the self-evaluative privilege.  *See* Privilege Log; Am. Privilege Log; Def.'s Opp'n 6.  The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which provides that a requesting party ordinarily may not "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A); *see also FTC v. Boehringer*

*Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 17 (D.D.C. 2016). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

The party invoking the work product protection bears the "burden of proving, by competent evidence and to a reasonable certainty, each of the essential elements" necessary to support the applicability of that protection. *In re Veiga*, 746 F. Supp. 2d 27, 41 (D.D.C. 2010); s*ee also United States v. Clemens*, 793 F. Supp. 2d 236, 255–56 (D.D.C. 2011). First, it is necessary to establish that the requested documents were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *see also In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). After that showing has been made, the discoverability of the material turns on whether it is "fact" or "opinion" work product. *Clemens*, 793 F. Supp. 2d at 244; *see also Upjohn Co. v. United States*, 449 U.S. 383, 400–01 (1981). Opinion work product reveals the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" and is "virtually undiscoverable." Fed. R. Civ. P. 26(b)(3)(B); *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997); *see also Hickman v. Taylor*, 329 U.S. 495, 508, 511–12 (1947); *FTC v. Boehringer Ingelheim Pharm., Inc.* (*Boehringer II*), 778 F.3d 142, 149 (D.C. Cir. 2015). By contrast, a party may obtain fact work product by showing that it has a "substantial need for the materials to prepare its case and cannot, without undue hardship," obtain the materials by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Boehringer II,* 778 F.3d at 153.

WMATA has failed to demonstrate that these records were created because of a reasonable anticipation of litigation and otherwise qualify for work product protection.[10] WMATA's opposition to Plaintiff's Motion to Compel gives the work product protection scant attention; WMATA fails to identify the work product protection by name and states only that "[t]he investigative reports are also not discoverable as prepared in anticipation of litigation." Def.'s Opp'n 6. Given the important purposes that the work product doctrine serves, the Court provided WMATA a second opportunity to establish the applicability of the work product protection and issued an order requesting supplemental briefing on this issue. *See* Order, ECF No. 25. That order specifically advised WMATA that a party asserting a privilege must "present the underlying facts demonstrating the existence of the privilege," and "conclusively prove each element of the privilege." *Id.* at 2 (quoting *In re Lindsey*, 158 F.3d at 1270) (internal quotation marks omitted). Yet WMATA still has not presented facts that support the application of the work product protection. In its supplemental brief, WMATA continues to rely on "conclusory statements, generalized assertions, and unsworn averments of its counsel." *ISS Marine Servs., Inc.*, 905 F. Supp. 2d at 127 (internal quotation marks and citation omitted). That falls far short of carrying WMATA's burden to present sufficient facts to allow the Court to "state with reasonable certainty that the privilege applies." *TRW, Inc.*, 628 F.2d at 213.

WMATA's reliance on *Whisenton v. WMATA*, No. 88-2637 (D.D.C. Dec. 22, 1988), and other precedent reflects a fundamental misunderstanding of the evidentiary hurdle that it must clear to invoke the work product protection. WMATA appears to believe that the fact that a judge on this Court concluded in a different case that reports created by a WMATA supervisor or

---

[10]   Given WMATA's failure to clear this threshold requirement for work product protection, the Court need not and will not address whether these documents constitute fact or opinion work product.

safety committee were prepared in anticipation of litigation and thus protected by the work product protection requires this Court to reach the same conclusion. *See* WMATA's Mem. Regarding Work Product Privilege 1–2, ECF No. 26. But this Circuit's precedent requires that courts ask "whether, in light of the nature of the document and the factual situation *in the particular case*, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir.2010) (emphasis added) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir.1998)). Thus WMATA must articulate specific facts to prove that the redacted documents at issue *in this case* were created because WMATA anticipated that litigation would ensue. *See In re Veiga*, 746 F. Supp. 2d at 41. It has wholly failed to do so. The fact that WMATA carried that burden in a different case does nothing to advance WMATA's obligation to establish its reasons for creating the documents at issue here.

For the foregoing reasons, WMATA's assertion of the work product protection fails. WMATA shall release to Ms. English any information that was redacted pursuant to the work product protection that is not independently protected by the self-evaluative privilege.

### 3.    Post Remedial Measures

WMATA's privilege log identifies "Post Remedial Measures" as a basis for redacting portions of the investigative file. *See* Am. Privilege Log; *see also* Privilege Log (noting "Post Remedial Measure(s)" in the "Privilege" column). WMATA also argues that post accident remedial measures are inadmissible and "therefore any exhibit related to that subject calls for information that is immaterial and irrelevant." Def.'s Opp'n 5. However, the annotated documents submitted with the privilege log do not contain any redactions attributed to the fact that the materials describe post-remedial measures. At the motions hearing, counsel for

WMATA was unable to articulate any independent privilege applicable to post-remedial measures, and instead appeared to argue that the self-evaluative privilege shielded WMATA's post-remedial actions from disclosure.[11]  Therefore the Court concludes that the Privilege Log's reference to "post-remedial measures" merely describes a sub-category of the information that WMATA contends is within the scope of the self-evaluative privilege.

To the extent WMATA means to invoke Federal Rule of Evidence 407 — which it has not cited — that rule would not provide a basis to withhold materials describing post-accident remedial measures in discovery.  Rule 407 addresses the *admissibility* of post-accident remedial measures.[12]  But under Federal Rule of Civil Procedure 26, information "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  Further, Rule 407 expressly contemplates that evidence of post-accident remedial measures may be admitted for impeachment or certain other purposes.  Fed. R. Evid. 407.  *See Mahnke*, 821 F. Supp. 2d at 152.  Therefore the rule does not support WMATA's blanket assertion that all information regarding post-accident remedial measures is irrelevant and outside the scope of discovery.  *See generally Sutton*, Civil Action No. 07-1197, slip op. at 4 (ordering the production of information regarding

---

[11]   During the July 17, 2017 Motions Hearing WMATA, upon inquiry from the Court and very briefly, contended that Rule 407 overlaps with the self-evaluative privilege.

[12]   Federal Rule of Evidence 407 states:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
> But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

post-remedial measures and "express[ing] no view on the admissibility, as opposed to the discoverability, of this information").

### 4. Confidential Employee Numbers

The Privilege Log identifies "Confidential Employee Number" as a basis for redacting portions of several documents from the investigative file. *See* Am. Privilege Log; Privilege Log. WMATA explained at the Motions Hearing that an employee number is a confidential identification number, similar to a Social Security Number, which is unique to each employee and can be used to access employee benefits such as metro passes. However, WMATA has cited no recognized privilege that insulates those numbers from discovery. Nor does there appear to be an agreement among the parties to allow the redaction of Confidential Employee Numbers.

Although no privilege protects Confidential Employee Numbers, Ms. English has not established that they are relevant to her claims. As the moving party, Ms. English bears the burden of proving the relevance of the information whose production she seeks to compel. *See Jewish War Veterans of the U.S., Inc.*, 506 F. Supp. 2d at 42. The Confidential Employee Numbers convey no substantive information regarding the Incident, and Ms. English has not explained how having the numbers would advance any of her claims. The numbers would not permit Ms. English to identify potential witnesses, because she would need additional information to match those numbers to a specific employee. Further, an interrogatory asking WMATA to identify the individuals who participated in the investigation would be a more efficient and straightforward means of obtaining that information. Therefore, the Court denies Ms. English's request to compel WMATA to release the WMATA Confidential Employee Numbers that have been redacted from the investigative file documents. Those numbers —

which appear on the Accident Appeal Form, Accident Report Form, Report for Incident, Post

Accident Decision, and Witness or Employee Statement Form — may remain redacted.

### B.      Responses to Interrogatories and Requests for Production

In addition to challenging WMATA's assertions of privilege, Ms. English contends that

WMATA's responses to certain interrogatories and requests for production are deficient.  *See*

MTC Mem. 7–13.  The disputed discovery requests seek information regarding how the Incident

occurred, the facts supporting WMATA's defenses, the characteristics of the bus, the bus driver

(including his personnel file and history of safety checks), and WMATA's training and

instruction of bus drivers.  *See id.*  WMATA contends that it has produced all pertinent

information, and that the information Ms. English seeks is neither relevant nor likely to lead to

the discovery of admissible evidence.  *See* Def.'s Opp'n 6–9.  Ms. English counters that the

information and documents requested are relevant to her claims and will help her fully evaluate

WMATA's defenses.  *See* MTC Mem. 7–13.

"[C]onsiderations of both relevance and proportionality . . . govern the scope of

discovery" allowed under Rule 26.  *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8

(D.D.C. 2016).  Specifically, a party may "take discovery 'regarding any nonprivileged matter

that is relevant to any party's claim or defense and proportional to the needs of the case.'"[13]  Fed

R. Civ. P. 26(b)(1).  Relevance is "construed broadly to encompass any matter that bears on, or

---

[13]   Courts weigh six factors to evaluate the proportionality of a discovery request: "(1) the
importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties'
relative access to relevant information; (4) the parties' resources; (5) the importance of the
discovery in resolving the issues; and (6) whether the burden or expense of the proposed
discovery outweighs its likely benefit."  *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
No. 11-CV-1049 (PLF/GMH), 2017 WL 4011136, at *3 (D.D.C. Sept. 11, 2017) (quoting
*Williams v. BASF Catalysts, LLC*, No. 11-1754, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017)
(citing Fed. R. Civ. P. 26(b)(1)) (internal quotation marks omitted).  WMATA has not raised a
proportionality objection to the disputed interrogatories and document requests.

that reasonably could lead to other matter[s] that could bear on" a party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Shamesh*, 314 F.R.D. at 8 (quoting *Oppenheimer*); *Jewish War Veterans of the U.S., Inc.*, 506 F. Supp. 2d at 41 (noting that Federal Rule of Civil Procedure 26 permits "broad access to relevant information at the discovery stage"). Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Further, Rule 26, as amended, no longer limits discovery to information that is "reasonably calculated to lead to the discovery of admissible evidence." *Shamesh*, 314 F.R.D. at 8 (discussing changes implemented in December 2015 amendments to Rule 26); Fed. R. Civ. P. 26 advisory committee's note to 2015 Amendment (noting that the "former provision for discovery of relevant but inadmissible information . . . is also deleted")).

As the party seeking to compel further responses to interrogatories and requests for production of documents, Ms. English "bears the initial burden of explaining how the requested information is relevant." *Jewish War Veterans of the U.S., Inc.*, 506 F. Supp. 2d at 42; *see also Cartagena v. Centerpoint Nine, Inc.*, 303 F.R.D. 109, 112 (D.D.C. 2014). If Ms. English meets that burden, WMATA must then show "why discovery should not be permitted." *All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d at 6 (quoting *Alexander v. FBI*, 194 F.R.D. 316, 326 (D.D.C. 2000)) (internal quotation marks omitted); *see also Shamesh*, 314 F.R.D. at 8. Most of the information Ms. English seeks is relevant and discoverable, and the Court therefore partially grants Ms. English's Motion to Compel.

### 1. How the Incident Occurred

Plaintiff's request for WMATA's description of how the Incident occurred concerns Interrogatory 9, which states:

- <u>Interrogatory 9</u>: Describe in detail and in chronological order how you contend that the Incident occurred, identifying each individual(s) upon whom or document(s) upon

> which you rely for your answer and the specific information provided by each identified source.

*See* MTC Mem. 7, 9 n.8; Pl.'s Mot. to Compel Ex. 4 at 3, ECF No. 12-5.  In response, WMATA objected on the grounds that Terry Smith lacked personal knowledge of the Incident and then directed Ms. English to "<u>see</u>, investigative file and video previously produced."  Pl.'s Mot. to Compel Ex. 5 at 7, ECF No. 12-6.  At the motions hearing WMATA clarified that it believes that only the investigative file and video of the Incident are relevant, and thus contends that it should not be required to provide any more information regarding the Incident.

Information concerning how the Incident occurred is obviously relevant and goes to the heart of Ms. English's claims.  Indeed, it is difficult to conceive of any facts that would be more significant than those requested here.  WMATA's assertion that the video provides the "best evidence" of how the Incident occurred, and thus any further description would be irrelevant, misses the mark.  *See* Def.'s Opp'n 6–7.  WMATA identifies no precedent, and this Court is aware of none, that defines relevant evidence as that which constitutes the "best evidence" of an allegation or fact.  To the contrary, discovery generally should be allowed "unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."  *Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 32 (D.D.C. 2010).

Given the obvious relevance of the information requested in Interrogatory 9, WMATA's response is incomplete.  WMATA has refused to describe the Incident and simply directs Ms. English to the investigative file and a video.  Rule 33(d) permits a party to provide business records instead of preparing a narrative written response to an interrogatory.  Fed. R. Civ. P. 33(d); *see Haughton v. Dist. of Columbia*, 161 F. Supp. 3d 100, 102 (D.D.C. 2014).  But such a response must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R.

Civ. P. 33(d)(1). Here, WMATA has not identified any specific unredacted document in the investigative file that provides a detailed and comprehensive description of how the Incident occurred, and WMATA redacted portions of that file to withhold self-evaluative material. WMATA cannot, therefore, rely on Rule 33(d) to justify its refusal to provide a narrative response to this interrogatory. Further, the video does not capture the entirety of the Incident as it does not show what occurred inside the bus. *See* MTC Mem. 10. Thus neither the investigative file nor the video provides a complete answer to Ms. English's Interrogatory 9. Ms. English is entitled to have a verified interrogatory response in which WMATA provides its account of how the Incident occurred. WMATA's response to Interrogatory 9 is deficient, and WMATA must supplement it to provide non-privileged information regarding how the Incident occurred.

### 2. Facts Supporting WMATA's Defenses

Ms. English's request for information concerning WMATA's defenses arises from the following two discovery requests:

- Interrogatory 21: Describe in detail all factual bases for any affirmative defenses that you are asserting in this action, including, but not limited to, all facts that support any contention that Mr. Burrell was contributorily negligent and/or assumed the risk.
- Request for Production 3: All documents which relate, reflect, or refer to the grounds of, and substance of, each defense, affirmative or otherwise, asserted by you in this litigation.

Pl.'s Mot. to Compel Ex. 4 at 5. In response to Interrogatory 21, WMATA raised privilege objections and then stated that "WMATA has previously produced all relevant documents in its Initial Disclosures." *Id.* Ex. 5 at 11. WMATA further noted that it needed to review Mr. Burrell's medical records in order "to understand the nature and extent of Decedent's medical condition(s) both while Decedent was on the bus, exiting the bus, leaning against the bus, falling under the bus and while in the hospital." Pl.'s Mot. to Compel Ex. 5 at 11. In response to

Request for Production 3, WMATA objected on the grounds of the work product protection, the attorney-client and self-evaluative privileges, and then indicated that it had already produced non-privileged documents. *See* Pl.'s Mot. to Compel Ex. 6 at 3, ECF No. 12-7.

Interrogatory 21 is a contention interrogatory. Such interrogatories "ask a party: to state what it contends, . . . [or] to state all the facts upon which it bases a contention." *Everett v. USAir Grp., Inc.*, 165 F.R.D. 1, 3 (D.D.C. 1995) (quoting *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994)) (internal quotation marks omitted). WMATA argues that this type of interrogatory is "contrary to law." Def.'s Opp'n 6. But it is well settled that contention interrogatories that seek non-privileged information are permissible and warrant a response. *See Barnes v. Dist. of Columbia*, 270 F.R.D. 21, 24 (D.D.C. 2010); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete . . . or some other time."). However, the obligation to respond is often deferred "until near the end of the discovery period unless the proponent carries its burden of demonstrating why they are necessary earlier on." *Everett,* 165 F.R.D. at 3 (citing *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 335–36 (N.D. Cal. 1985)). WMATA cannot object to the timing of this contention interrogatory at this stage of litigation. Discovery closed on September 15, 2017, and WMATA should therefore possess all the facts necessary to formulate its response. *See* 7/18/17 Minute Entry (Status Conference before Judge Jackson).

The work product protection and the privileges WMATA asserts do not relieve it of its duty to respond to this interrogatory. Where, as here, a contention interrogatory seeks only "the factual specifics which the party contends supports a claim," the work product doctrine does not

allow the responding party to withhold information. *Barnes*, 270 F.R.D. at 24. WMATA has not offered any evidence that would indicate that the relevant facts are subject to the attorney-client privilege, nor has it identified any such information on the Privilege Log. Finally, the self-evaluative privilege protects only conclusions reflecting WMATA's self-critical analysis of the Incident, and thus poses no bar to WMATA's release of facts supporting its affirmative defenses.

WMATA's reference to its prior production of "all relevant documents in its Initial Disclosure" does not satisfy its obligation to respond to Interrogatory 21. Rule 33 requires a complete response, and a generic reference to prior productions lacking any citation to specific documents does not meet that requirement. *See* Fed. R. Civ. P. 33(d)(1); *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 30 (D.D.C. 2012) (noting that Rule 33(d) requires a party to "specify [] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could") (internal quotation marks omitted); *Haughton*, 161 F. Supp. 3d at 103 (quoting *Kellogg Brown & Root Servs., Inc.*). Therefore, WMATA must supplement its response to Interrogatory 21 to provide the facts supporting its affirmative defenses.

WMATA's response to the corresponding document request, Request for Production 3, also is deficient. WMATA states that it has produced all non-privileged responsive documents, but fails to identify which document(s) it deems responsive to this request. If WMATA has produced these documents, it must supplement its response to identify the responsive documents. *See Weaver v. Gross*, 107 F.R.D. 715, 718 (D.D.C. 1985) (finding summary response to document request insufficient and requiring party to provide a "precise and specific response . . . identifying the document or documents produced"). If WMATA possesses responsive non-

privileged documents that it has not yet produced, it must produce those documents to Ms. English.

### 3. Information Regarding the Bus

Ms. English seeks to compel the production of information regarding the Metrobus involved in the Incident. Specifically, Plaintiff's Interrogatory 5 requests that WMATA:

> [g]ive a complete description of the vehicle that was involved in the Incident including the year, make, model, color, motor, length, weight, type of transmission, type of brake system, type of steering system, horsepower, width of driver's seat, height of driver's seat from the ground, and any modifications to the vehicle, including the present location of the vehicle during hours of non-operation.

Pl.'s Mot. to Compel Ex. 4 at 2. In response, WMATA stated that "[t]he subject vehicle was a 2001 New Flyer passenger bus" and identified the VIN and License Plate Number. *Id.* Ex. 5 at 4. WMATA's response raised no objection to the relevance or discoverability of the remaining information sought in Interrogatory 5.

The information WMATA omitted — the motor, length, weight, type of transmission, type of brake system, type of steering system, horsepower, width of driver's seat, height of driver's seat from the ground, modifications to the vehicle, and information about the present location of the vehicle — is relevant to Ms. English's claims. Ms. English could use those facts to establish the bus driver's range of sight and whether he could see the bus's blind spots. MTC Mem. 11; *see also* Pl.'s Reply 9–10. The information requested also would inform an expert's assessment of how the accident occurred, including whether the driver should have seen Mr. Burrell, and what safety precautions may have been necessary given the size and structure of the bus in relation to the driver. At the Motions Hearing, counsel represented that the relevant bus manual does not appear to be publicly available. *See also* MTC Mem. 11. As the bus is no

longer available for physical inspection, Ms. English cannot obtain this critical information from any other source.

WMATA's response to Interrogatory 5 is, therefore, clearly deficient. WMATA ignored and failed to provide most of the requested details regarding the bus, and has offered no justification for its refusal to do so. Therefore WMATA must supplement its response to Interrogatory 5 to provide all the information requested.

### 4.     Information Regarding the Bus Driver

Ms. English also seeks information regarding the bus driver in Interrogatories 6 and 8, and Requests for Production 10, 11, 15, 18, and 24. *See* MTC Mem. 11–12. These interrogatories and requests for production span a range of information, including the bus driver's physical characteristics, employment information and duties, health records, and any prior traffic and criminal charges. Specifically, Ms. English's Interrogatories 6 and 8 request the following information:

- Interrogatory 6: Identify the operator (at the time of the Incident) of the WMATA vehicle involved in the Incident (including his height and weight at the time of Incident), and describe the operator's employment history with you, including all employment assignments, positions, and responsibilities, and whether the operator was ever disciplined, reprimanded, suspended, demoted, placed on leave, reassigned or otherwise punished during the operator's employment with you, and any such action taken in connection with the Incident.

- Interrogatory 8: Describe in detail what you believe to be all of the work-related activities of the operator of the vehicle involved in the Incident during what you maintain to be the operator's working hours on September 3, 2015, including all such activities undertaken by him on your behalf.

MTC Mem. 11 n.11, 12 n.14; Pl.'s Mot. to Compel Ex. 4 at 2–3. In response to Interrogatories 6 and 8, WMATA identified the bus driver and identified the route he drove, but objected to providing any further information; WMATA based its objection on the self-evaluative privilege and relevance. *See* Pl.'s Mot. to Compel Ex. 5 at 4–6.

Requests for Production 10, 11, 15, 18, and 24 seek the following documents:

- Request for Production 10: All documents which relate, reflect or refer to the location of, and/or any activities, conducted by the operator of the WMATA Bus on September 3, 2015, including but not limited to, the operator's conduct of business, whether for you or otherwise.

- Request for Production 11: All documents and things concerning the employment duties, tasks, and responsibilities of the operator of the WMATA Bus involved in the Incident (in general and on the day of the Incident), including all documents concerning the operator's job description, work schedule, and use of your vehicles.

- Request for Production 15: All documents and things concerning any analyses, discussion, evaluation, or other appraisal concerning the physical, mental, emotional, and psychological health of the operator of the WMATA Bus involved in the Incident, conducted by or on behalf of you. This request specifically includes, all documents and medical records concerning the eyesight, hearing, and/or fitness to operate a motor vehicle of the operator of the WMATA Bus involved in the Incident, including, but not limited to, his most recent eyeglass or contact-lens prescription.

- Request for Production 18: All documents concerning any and all traffic and/or criminal charge(s) brought against the operator of the WMATA Bus involved in the Incident in the past ten (10) years, including any charges concerning the Incident. This request includes, but is not limited to, charging document(s), evidence, negotiation(s), plea(s), disposition(s), convictions, allocution(s) and sentencing(s).

- Request for Production 24: All personnel files of your agents, servants, and/or employees who were involved in the Incident.

MTC Mem. 11 n.11, 12 n.14; Pl.'s Mot. to Compel Ex. 4 at 6–8. In response to the requests for production, WMATA directed Ms. English to: the video of the Incident and unspecified documents that already had been produced (*see* Response to Request for Production ("RFP") 10); WMATA's Standard Operation Procedures Manual (*see* Response to RFP 11); and the driver's commercial license and post occurrence drug/alcohol test results (*see* Response to RFP 15). Pl.'s Mot. to Compel Ex. 6 at 5–6, 8, 9–10, 11–12. WMATA declined to provide any further documents, citing the attorney-client and self-evaluative privilege, work product

protection, and privacy concerns. WMATA also asserts that the lack of any viable claim of negligent hiring, supervision, or training[14] renders most of the requested documents irrelevant.

Ms. English argues that WMATA's responses to these discovery requests are inadequate, and asks the Court to compel WMATA to supplement those responses. Although WMATA's opposition memorandum does not specifically discuss many of the discovery requests at issue, at the Motions Hearing WMATA clarified that it raises a broad relevance objection to support its withholding of most of the requested information and documents. The following analysis discusses each disputed subcategory of information and documents regarding the bus driver that Ms. English seeks.

### The Bus Driver's Physical Characteristics

Ms. English seeks certain of the bus driver's physical characteristics, including the driver's height and weight. *See* Pl.'s Mot. to Compel Ex. 4 at 2 (Interrogatory 6). She contends that this information will help establish what the driver could see and what movements would be necessary for him to view the bus's blind spots. *See* MTC Mem. 11. Those details are highly relevant to Ms. English's negligence claims. None of WMATA's objections purport to explain why this information would not be relevant. To the extent WMATA relies on its broad assertion that the video provides the best evidence of what happened on the day of the Incident, *see* Def.'s Opp'n 8, that argument fails because the video would not reveal specific details about the driver's physical characteristics. Therefore, if WMATA possesses information about the driver's

---

[14]    Sovereign immunity protects WMATA from suit on tort claims that allege negligent hiring, training, or supervision. *See Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[W]e hold that decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review."); *Martin v. Wash. Metro. Area Transit Auth.*, 273 F. Supp. 2d 114, 118 (D.D.C. 2003) (limiting *Burkhart's* finding of immunity regarding "decisions concerning hiring, training, and supervising" to tort claims). Ms. English has not asserted any such claims in this action.

height and weight at the time of the Incident, it must supplement its response to Interrogatory 6 to provide that information to Ms. English.

### *The Bus Driver's Activities on the Day of the Incident*

Ms. English also seeks information regarding the work-related activities the bus driver engaged in on the day of the Incident. *See* MTC Mem. 12; Pl.'s Mot. to Compel Ex. 4 at 3, 6 (Interrogatory 8 and RFP 10). WMATA contends that any activities that occurred before or after the time of the Incident are irrelevant. *See* Def.'s Opp'n 8. At the Motions Hearing WMATA emphasized that discovery should be narrowly focused on the precise moment when the accident occurred, and argued that a video capturing that moment renders superfluous any other information. But the driver's pre- and post-Incident activities are relevant because they could reveal whether the bus operator performed a pre-trip inspection prior to departing, performed safety checks when leaving bus stops, warned passengers of potential hazards, or dealt with medical situations. MTC Mem. 12. WMATA's production of the video does not satisfy its obligation to respond to these discovery requests because the video does not capture all of the driver's daily activities. Therefore, WMATA must supplement its response to Interrogatory 8 and produce the documents requested in Request for Production 10.

### *The Bus Driver's Personnel Records Regarding Safety, Driving, and Bus Operation*

Ms. English also seeks production of the bus driver's entire personnel file.[15] *See* Pl.'s Mot. to Compel Ex. 4 at 8 (RFP 24); MTC Mem. 11. She contends that the information in that file would reveal whether the bus driver had previously had difficulties executing his duties; for example, the file may reveal whether the driver had a history of failing to properly conduct

---

[15] Ms. English appears to use the phrase "personnel files" and "employment files" interchangeably. *See* MTC Mem. 11 & n.13; Pl.'s Mot. to Compel Ex. 4 at 8 (Request 24).

safety checks prior to departing a bus stop, failing to stop sufficiently close to the curb, or spending too much time at bus stops. *See* MTC Mem. 11–12. Ms. English notes that the requested information would "shed light" on the actions taken by the bus driver on the day of the Incident. *Id.* WMATA asserts that the employee file is: (1) confidential; (2) not relevant as there are no claims of negligent hiring, training, or supervision against WMATA; and (3) not relevant because the video provides the best evidence of the Incident. *See* Def.'s Opp'n 7–8.

Ms. English has established that the personnel file is relevant to the extent that it contains information relating to safety, driving, and operation of the bus. WMATA provides no credible argument to the contrary. The absence of any negligent hiring, training, or supervision claims is immaterial because information about the bus driver's safety and driving history is relevant to the negligence claims that have been raised here. Finally, WMATA's insistence that discovery should focus solely on the precise moment of the Incident, and that the video is the best and only discoverable evidence, lacks merit for the reasons discussed above.

WMATA's vague reference to "privacy laws" and its assertion that personnel files are confidential do not justify its refusal to provide the requested information. *See* Pl.'s Mot. to Compel Ex. 6 at 11–12 (Response to Request 24). "[R]esponsive information cannot be withheld merely because it is contained within a personnel file." *Nuskey v. Lambright*, 251 F.R.D. 3, 11 (D.D.C. 2008); *see also Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 164 (D.D.C. 2003) (ordering production of certain responsive documents from personnel files). Thus even if those files normally remain confidential, that does not place them outside the scope of discovery. Confidential materials are routinely produced in discovery, and a protective order can be used to safeguard sensitive personal information. *See Sperling v. Harman Int'l Indus., Inc.*, No. 10-2415 (JTB) (ETB), 2011 WL 4344165, at *2 (E.D.N.Y. Sept. 14, 2011) (quoting *Duck v.*

*Port Jefferson Sch. Dist.*, No. 07 CV 2224, 2008 WL 2079916, at *4 (E.D.N.Y. May 14, 2008))

(internal quotation marks omitted) ("[I]n most cases, a protective order can appropriately remedy

privacy concerns arising from discovery of personnel records.").  Accordingly, WMATA must

produce non-privileged responsive information from the bus driver's personnel file pertaining to

safety, driving, and operation of the bus.  The discoverability of other information in the files

will be addressed below.

### Additional Information Regarding the Bus Driver

The remainder of the interrogatories and requests for production cover several areas: (1)

employment history;[16] (2) the driver's employment duties, tasks, and responsibilities;[17] (3)

disciplinary information;[18] (4) traffic and criminal charges;[19] and (5) health records.[20]  As this

entire case turns on whether or not the driver properly operated the bus at the time of the

Incident, information about his professional background, responsibilities, disciplinary record,

and any traffic and criminal charges is highly relevant to Ms. English's claims.  WMATA has

identified no legitimate grounds for refusing to provide that information.  Thus, to the extent that

this information exists in the personnel file or other WMATA records, WMATA must

supplement its discovery responses to provide it to Ms. English.

However, Ms. English has not explained why all the health records requested in Request

for Production 15 would be relevant and discoverable.  WMATA has produced the results of the

post-Incident drug and alcohol test.  *See* Pl.'s Mot. to Compel Ex. 6 at 8 (Response to Request

15).  Documents "concerning the eyesight, hearing, and/or fitness to operate a motor vehicle,

---

[16]   *See* Interrogatory 6.
[17]   *See* Interrogatory 6, Request for Production 11
[18]   *See* Interrogatory 6.
[19]   *See* Request for Production 18.
[20]   *See* Request for Production 15.

including, but not limited to, [the driver's] most recent eyeglass or contact-lens prescription," *see* Pl.'s Mot. to Compel Ex. 4 at 7 (Request 15), are relevant because they might establish whether the driver had any impairments that rendered him unfit to operate the vehicle or that affected his ability to observe the passengers and the exterior of the bus at the time of the Incident.  Thus, to the extent that WMATA possesses that information, it must provide it to Ms. English.

However, the language in this document request seeking *all* documents concerning *any* appraisal of the driver's health is not limited to issues that affect the driver's ability to operate the bus.  This category encompasses information that is not germane to Ms. English's negligence claims.  For example, if the driver missed work due to an illness several months prior to the incident, that would not be relevant to Ms. English's negligence claims.  Accordingly, WMATA's obligation to produce the requested health records shall be limited to those records that concern the driver's eyesight, hearing, and/or fitness to operate a motor vehicle during his tenure as a WMATA employee.

### 5.    Information Regarding Training and Instruction

Finally, Ms. English requests information regarding the training and instruction of WMATA bus drivers in Interrogatories 19 and 23, and Requests for Production 12 and 14.  *See* MTC Mem. 12 n.15.  Those discovery requests provide as follows:

- <u>Interrogatory 19</u>:  Identify and describe in detail all training that the operator of the bus at the time of the Incident had received with respects [sic] to the following: (1) dealing with bus passengers who complained of illness while riding; (2) ensuring that alighting passengers were clear of the bus prior to leaving the bus stop; (3) ensuring that it was safe to depart a bus stop; (4) utilizing mirrors (exterior and interior) to determine whether it was safe to depart a bus stop; and (5) inspecting and adjusting mirrors prior to operating a bus.

- <u>Interrogatory 23</u>: To the extent not already described in your responses to Interrogatory 19, describe any training or instruction that the operator of the vehicle involved in the Incident received, prior to the Incident, concerning the operation of buses, including the bus involved in the Incident.  Include in your answer the date, place, and time of such training or instruction; identify the sponsoring entity for such

training or instruction and the persons who provided such training or instruction; describe the nature of the training; state whether the training or instruction was mandated by you or anyone else; and identify any documents regarding, referring to, relating to or evidencing the training or instruction.

- <u>Request for Production 12</u>: All documents which relate, reflect or refer to training or instruction provided to, or received by, the operator of the WMATA Bus involved in the Incident prior to the Incident concerning the operation of buses, including the WMATA Bus.

- <u>Request for Production 14</u>: All documents which relate, reflect, or refer to your policy concerning the responsibility of your employees and/or agents to operate motor vehicles and buses in a competent and safe manner and in accordance with all motor vehicle laws and regulations while acting on your behalf.

Pl.'s Mot. to Compel Ex. 4 at 4–7. In response to Interrogatories 19 and 23, WMATA declined to provide any responsive information and asserted that "there is no claim of negligent hiring, training, supervision, etc." *Id.* Ex. 5 at 10, 11–12. In response to Requests for Production 12 and 14, WMATA averred that it produced its SOPs, admitted that its drivers must operate buses in a safe manner, and declined to provide any further responsive documents because this case does not involve a claim of negligent hiring, training, or supervision. *See id.* Ex. 6 at 5–6.

The information and documents that Ms. English seeks are highly relevant to her negligence claims. Her ability to prevail will hinge upon defining the standard of care and establishing whether the driver's actions met that standard. Safety policies and information about driver training would provide evidence of how WMATA expects bus drivers to operate their buses and what actions they should take (including reasonable safety and operating precautions) if properly performing their duties. *See* MTC Mem. 13. The requested information about training, instruction, and standard operating procedures also potentially provides insight into the bus driver's habits, which may be relevant under Federal Rule of Evidence 406 (Habit; Routine Practice).

WMATA argues that its internal rules and policies do not establish the national standard of care.  *See* Def.'s Opp'n 9.  WMATA correctly states that the policies may not be sufficient, standing alone, to establish the national standard of care.  *See Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 39 (D.C. Cir. 2014) (noting that internal agency manuals "do not, on their own, establish the national standard").  But that does not render the policies or documents regarding driver training undiscoverable.  Relevant information encompasses "'any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *Shamesh* 314 F.R.D. at 8 (quoting *Oppenheimer*, 437 U.S. at 351).  The D.C. Circuit has recognized that "internal agency manuals such as WMATA's standard operating procedures may provide evidence bearing on the standard of care."  *Robinson*, 774 F.3d at 39.  Therefore the records Ms. English seeks are clearly relevant.

Given the obvious relevance of the requested information, WMATA's responses to these discovery requests are incomplete.  Although WMATA has produced its Standard Operating Procedures, it has not produced the other information and documents that Ms. English seeks.  Therefore, WMATA must supplement its responses to Interrogatories 19 and 23 and Requests for Production 12 and 14.

## II.      Motion for Protective Order and Cross-Motion to Compel

WMATA seeks a protective order to prohibit Ms. English from taking the Rule 30(b)(6) deposition noticed on June 5, 2017.  *See* Def.'s Mot. for Protective Order, ECF No. 15 & Ex.1, ECF No. 15-2.  The deposition notice outlines 18 "Subjects for Examination," which overlap substantially with the interrogatories and requests for production at issue in the Motion to Compel considered above.  Def.'s Mot. for Protective Order Ex. 1.  WMATA contends that the proposed 30(b)(6) topics are duplicative, cumulative, and "appear[] intended to annoy,

embarrass, oppress or unduly burden WMATA." Def.'s Mot. for Protective Order 2. WMATA notes that it requested that Ms. English's counsel "narrow the 'shot gun' approach to discovery which amounts to a 'fishing expedition.'" *Id.* at 2.

Ms. English opposes the motion and has cross-moved to compel WMATA to produce one or more witnesses to testify on its behalf in accordance with Rule 30(b)(6). First, Ms. English argues that WMATA's motion should be denied because it failed to comply with Local Civil Rule 7(m). Pl.'s Opp'n to Def.'s Mot for Protective Order and Cross-Mot. to Compel WMATA's Dep. 2–6 ("Pl.'s Opp'n to MPO"), ECF Nos. 16 & 17. In the alternative, she argues that WMATA has not established good cause to issue a protective order, and therefore should be compelled to produce witnesses who will testify regarding the subjects outlined in the Notice. *Id.* at 6–7, 9.

### A. Compliance With Local Civil Rule 7(m)

The Local Rules require that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." Local Civil Rule 7(m). The purpose of this rule "is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006); *see also Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 21 (D.D.C. 2013); Fed. R. Civ. P. 26(c)(1) (requiring that a motion for protective order "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action"). "The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve

the non-dispositive disputes that occur in the course of litigation." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 235 F.R.D. 521, 529 (D.D.C. 2006). This Court routinely denies non-dispositive motions for failure to comply with Rule 7(m). *See, e.g.*, *Ellipso, Inc.*, 460 F. Supp. 2d at 102; *Alexander v. FBI,* 186 F.R.D. 185, 187 (D.D.C. 1999).

Ms. English contends that WMATA's attempts to confer with plaintiff's counsel were too perfunctory to constitute a "good faith" effort to resolve the parties' dispute. Specifically, Ms. English asserts that WMATA's failure to provide substantive objections despite repeated requests from Ms. English's counsel deprived the parties of an opportunity to narrow the disputed issues. Pl.'s Opp'n to MPO 2–6. WMATA's motion does not include a Rule 7(m) certification, but WMATA attached the parties' email communications to its motion and appears to believe that those emails were sufficient to satisfy Rule 7(m). *See generally* Def.'s Mot. for Protective Order Ex. 2, ECF No. 15-3.

The parties' communications were too perfunctory to satisfy Rule 7(m). In the email exchange, counsel for WMATA asked plaintiff's counsel what information Ms. English truly wanted and insisted that Plaintiff narrow the scope of the proposed 30(b)(6) deposition. *See* Def.'s Mot. for Protective Order Ex. 2; Pl.'s Opp'n to MPO Ex. 1, ECF No. 16-1. Plaintiff's counsel requested specific objections to the noticed deposition topics, but contends that WMATA failed to provide any. *See* Pl.'s Opp'n to MPO Ex. 1. Simply stating an objection without elaborating further upon it or engaging in any meaningful dialogue is unlikely to narrow a dispute, and thus does not meet Rule 7(m)'s requirement to confer in good faith. *See Pogue*, 235 F.R.D. at 529.

Notwithstanding the lack of meaningful pre-filing discussions, the Court will consider the Motion for Protective Order on its merits. The Court may, in the interest of judicial economy,

reach the merits of a motion despite the parties' failure to satisfy Local Civil Rule 7(m).  *See Styrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 62 n.3 (D.D.C. 2012).  The breadth of the parties' disputes regarding written discovery, which they could not resolve on their own despite protracted discussions and discovery status conferences, makes it highly unlikely that further discussions would narrow this discovery dispute.  Accordingly, the Court will not require the parties to engage in likely futile efforts to resolve or narrow this dispute on their own.

> **B.      Showing of Good Cause**

A protective order prohibiting a deposition is an "extraordinary measure which should be resorted to only in rare occasions."  *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001); *see Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). The moving party "must make a specific demonstration of facts" that establish good cause to grant this extraordinary relief.  *Alexander*, 186 F.R.D. at 75.  Courts reviewing such motions generally employ a balancing test "weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial."  *Jennings*, 201 F.R.D. at 275; *Huthnance*, 255 F.R.D. at 296; *see also Alexander*, 186 F.R.D. at 75.

There is nothing extraordinary about the 30(b)(6) notice that would warrant a protective order.  WMATA contends that allowing this deposition to proceed would subject it to "unreasonably cumulative and/or duplicative discovery in violation of FRCP 26."  Def.'s Mot. for Protective Order ¶ 3.  Although the Motion for Protective Order does not identify why the requested deposition testimony would be cumulative or duplicative, WMATA clarified at the Motions Hearing that it objects to the fact that the notice encompasses the same topics as written

discovery, and objects on relevance grounds to many of those topics for the same reasons that it challenged the corresponding interrogatories.

There is no rule that prohibits a party from deposing witnesses on the same topics that have been addressed in written discovery. To the contrary, depositions typically provide an opportunity to further probe the facts elicited through interrogatories and requests for production. *See Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005) ("By its very nature the discovery process entails asking witnesses questions that have been the subject of other discovery."). Therefore this is not a legitimate objection to the deposition notice.

WMATA's assertion that the identified topics are not relevant also lacks merit. Ms. English seeks testimony regarding: documents, photographs, videotapes, or other materials concerning the Incident and/or Mr. Burrell; communications concerning the Incident and/or Mr. Burrell; information concerning the Metrobus involved in the Incident; surveillance and/or security cameras on the Metrobus involved in the Incident; WMATA's policies, procedures, training, and practices concerning bus operations and passenger safety at the time of the Incident, including how WMATA implements those policies; the manner in which WMATA trains and supervises its employees about its bus operations and passenger safety policies and procedures; WMATA's communications with the federal government regarding the Incident; what WMATA believes to be the applicable standards of care concerning certain aspects of bus operation; actions WMATA took in response to the Incident; how WMATA contends the Incident occurred; WMATA's retention and destruction of documents relevant to this case; the details, substance, and content of WMATA's answers to Ms. English's Interrogatories; the identity, responsibilities, and certain other details concerning WMATA employees and agents responsible for the transportation and safety of Mr. Burrell at the time of the Incident; information regarding

the Final Report of Investigation including the factual findings and the identities of the employees identified by "SAFE" and a number; and information regarding the schedule and route of the Metrobus involved in the Incident.

Assuming *arguendo* that it would be appropriate for this Court to reject Rule 30(b)(6) topics on relevance grounds,[21] the identified topics are all appropriate lines of inquiry for discovery because they concern the Incident, the applicable standard of care, training, and WMATA's safety and bus operation policies. At the Motions Hearing, when invited to elaborate on the basis for its objection to the deposition topics and corresponding interrogatories, WMATA argued that only the events that occurred at the moment of the Incident are relevant. That argument is no more persuasive with respect to deposition testimony than it was regarding written discovery. WMATA's suggestion that discovery must be limited to such a narrow window of time is at odds with Rule 26, which encourages "broad discovery." *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004).

Finally, WMATA has offered no facts to support its assertion that the "precise purpose" of the deposition "is questionable, and appears to annoy, embarrass, oppress or unduly burden WMATA." Def.'s Mot. for Protective Order ¶ 8. Nor has it proffered facts to establish that permitting this deposition would cause any harm. WMATA appears to consider it burdensome to prepare witnesses to address such a variety of topics. But that is the nature of litigation. If WMATA had provided more robust answers to the written discovery, perhaps Ms. English

---

[21] Another judge on this Court has suggested that courts should not rule in advance on the relevance of Rule 30(b)(6) topics, given that in ordinary depositions a witness must answer irrelevant questions. *See Banks v. Office of Senate Sergeant at Arms*, 222 F.R.D. 7, 18 (D.D.C. 2004) ("[I]nsisting that a federal court act to prevent the possibility that irrelevant questions will be asked at a deposition is completely unprecedented and would require the court to micro-manage the discovery process.").

would not have felt compelled to use a 30(b)(6) deposition to obtain basic facts regarding her claims and WMATA's defenses. The time limitations applicable to depositions, as well as Plaintiff's counsel's interest in efficiently using his time, should deter the prolonged "fishing expedition" that WMATA fears.

For the foregoing reasons, WMATA has failed to show that a protective order should be issued. Accordingly, the Court denies Defendant's Motion for Protective Order and grants Plaintiff's Cross-Motion to Compel. Defendant WMATA shall designate one or more witnesses to testify at a 30(b)(6) deposition.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Compel [ECF No. 12]; DENIES Defendant's Motion for Protective Order [ECF No. 15]; and GRANTS Plaintiff's Cross-Motion to Compel [ECF No. 17]. A separate Order will accompany this Memorandum Opinion.


DATED: October 13, 2017

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE